IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STERIS CORPORATION, et al., | ) | CASE NO. 1:25 CV 2778 |
| | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| FREDERICK HALLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion of Defendants Frederick Haller and Endolastic, Inc. ("Endolastic") for Judgment on the Pleadings on Plaintiffs' Complaint.(ECF #9) In addition, Plaintiffs Steris Corporation ("STERIS") and U.S. Endoscopy Group ("US Endoscopy") have filed a Motion for Judgment on the Pleadings on the Defendants' Counterclaims (ECF # 13). Both motions are now fully briefed.

### Factual and Procedural Background

Plaintiff STERIS is engaged in the business of infection prevention and decontamination, with a long list of products and services. Complaint ¶25 (ECF #1 at ¶25). Plaintiff US Endoscopy is a wholly owned subsidiary of STERIS acquired in 2012. US Endoscopy is a leader in the design, manufacture and sale of therapeutic and diagnostic medical devices and accessories used in gastrointestinal endoscopy markets worldwide. STERIS and US Endoscopy

currently develop endoscopy technology sold under STERIS branding. (ECF #1 at ¶26)

Defendant Haller founded Intelligent Endoscopy in 2014. Intelligent Endoscopy was in the business of developing, manufacturing, marketing and selling endoscopic band ligation products, including an endoscopy band ligation product, the SMARTBAND multi-band ligation system (the "SMARTBAND System"). Haller was involved in all aspects of research and development for Intelligent Endoscopy and was the primary inventor for the technology developed by Intelligent Endoscopy including concepts that were commercialized and patented and other concepts that remained under development. (ECF #1 at 27, 29)

In 2020, Plaintiff US Endoscopy entered into an Asset Purchase Agreement ("APA") with Intelligent Endoscopy in which Intelligent Endoscopy sold all of its assets to U.S. Endoscopy, including all intellectual property owned by Seller or held by Seller in its operation of the business. In anticipation of the APA, on December 18, 2020, Haller executed a Confidentiality and Invention Assignment Agreement with Intelligent Endoscopy in which Haller assigned to Intelligent Endoscopy all inventions and other developments that he developed while employed by Intelligent Endoscopy. Under the Confidentiality and Invention Assignment Agreement, Haller agreed to maintain the confidentiality of the Intelligent Endoscopy confidential information and agreed not to use or disclose any such information, including trade secrets and other proprietary Intelligent Endoscopy information. The Confidentiality and Assignment Agreement was included as an Assumed Contract that US Endoscopy acquired under the APA. (ECF #1 at ¶¶ 27, 31-45)

Also in December 2020, STERIS offered Haller a full-time job as Director, Research & Development, Banding Products, which he accepted. In this job, Haller's responsibilities

-2-

included driving growth and profitability for STERIS's banding/ligation product portfolio and developing future ligation products, technologies, and methodologies. (ECF #1 at ¶ 48.) Haller signed an Employment Agreement with STERIS which included confidentiality, return of records and non-competition provisions. The Employment Agreement also included a provision where Haller agreed to assign to STERIS any Inventions, Ideas or other Intellectual Developments he made during his employment. (ECF #1 at ¶¶ 48-52). During the course of his employment with STERIS, Haller entered into two Long-Term Equity Incentive Plan Agreements ("LTI") with STERIS. The first in 2021 which includes the 2021 Restricted Stock Agreement and the 2021 Nondisclosure and Non-competition Agreement ("2021 LTI") and the second in 2022 which includes the 2022 Restricted Stock Agreement and 2022 Nondisclosure and Non-competition Agreement ("2022 LTI"). Under these Agreements Haller agreed to keep STERIS's invention records, trade secrets, and other information in strict confidence and not disclose them to anyone or use them to further his own business or benefit and, upon termination of his employment with STERIS, he would wait a period of two years to engage in a business that competes with STERIS. (ECF #1 at ¶¶ 56-57).

In 2023 STERIS restructured its endoscopy related workforce and closed its North Carolina facility where Haller worked and the SMARTBAND System products were manufactured. During his employment at STERIS Haller emailed confidential STERIS documents to his personal email and never returned any STERIS records or documents upon his termination. (ECF #1 ¶¶ 58-63).

In January 2024, Haller formed Defendant Endolastic and is its chief executive officer. STERIS asserts that Endolastic competes directly with STERIS and US Endoscopy in the

endoscopic technology market. Plaintiffs further allege that Haller and Endolastic have wrongfully co-opted U.S. Endoscopy's intellectual property, confidential information, and trade secrets to further Endolastic's business. Finally, Plaintiffs assert that Haller's work for Endolastic violates four of his non-competition agreements. (ECF #1 at ¶¶ 64-87). Plaintiffs' Complaint asserts the following claims: Breach of the Asset Purchase Agreement (U.S. Endoscopy against Haller) (Count I); Breach of the Confidentiality and Invention Assignment Agreement (US Endoscopy against Haller)(Count II); Breach of the Employment Agreement(STERIS against Haller)(Count III); Breach of the 2021 Non-Disclosure and Non-competition Agreement (STERIS against Haller)(Count IV); Breach of the 2022 Non-Disclosure and Non-competition Agreement (STERIS against Haller)(Count V); Conversion (US Endoscopy against Haller and Endolastic)(Count VI); Conversion (STERIS against Haller and Endolastic)(Count VII); Tortious Interference (US Endoscopy against Endolastic)(Count VIII); Tortious Interference (STERIS against Endolastic)(Count IX); Violation of the Defend Trade Secrets Act (US Endoscopy against Haller and Endolastic)(Count X); Violation of the Defend Trade Secrets Act ("DTSA") (STERIS against Haller and Endolastic)(Count XI); Violation of the Ohio Uniform Trade Secrets Act ("OUTSA")(US Endoscopy against Haller and Endolastic)(Count XII); and Violation of the Ohio Uniform Trade Secrets Act (STERIS against Haller and Endolastic)(Count XIII).

Defendants filed two counterclaims against Plaintiffs. (ECF #8) The first is for Declaratory Judgment on the Restrictive Covenants asserting that a real and justiciable controversy exists concerning the validity, enforceability and breach of the restrictive covenants in the Employment Agreement, the APA, the Confidentiality and Inventions Assignment

Agreement, and the 2021 LTI and 2022 LTI Agreements. (ECF #8 ¶¶ 67-72) The second Counterclaim is for Unfair Competition asserting that Plaintiffs filed this action to unfairly eliminate Defendants as competitors of the endoscopic method for treating GERD. (ECF #8 ¶¶ 73-80).

### Standard of Review

Fed. R. Civ. P. 12(c) provides, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. Ohio 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. Tenn. 1998)). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted).

The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Solo v. UPS Co.*, 819 F.3d 788, 793 (6th Cir. Mich. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In construing the pleadings, the Court accepts the factual allegations of the non-movant as true, but not unwarranted inferences or legal conclusions. *Holland v. FCA US LLC*, 656 F. App'x 232, 236-37 (6th Cir. Mich. 2016) (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. Tenn. 2000)).

**Discussion**

**I. Defendants' Motion for Judgment on the Pleadings of Plaintiffs' Complaint**

**A. Misappropriation of Trade Secrets**

Defendants assert that Plaintiffs' claims for misappropriation of trade secrets under the DTSA and the OUTSA (Counts X-XIII) fail because the Complaint does not describe the alleged trade secrets with particularity sufficient to differentiate them from the processes and information described in publicly available patent applications and information posted on STERIS's website. Further, Defendants contend that Plaintiffs failed to assert factual allegations sufficient to show that they protected their alleged trade secrets given the publicly available patent applications and information on STERIS's website and that they also failed to assert factual allegations sufficient to show that Defendants actually used their alleged trade secrets.

To state a claim under the DTSA, a plaintiff must allege: "(1) the existence of a trade secret[;] (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret[.]" *In re Island Indus., Inc.*, No. 23-5200, 2024 WL 869858, 2024 U.S. App. LEXIS 5077 (6th Cir. Feb. 29, 2024) (quotation and citation omitted). To state a claim under OUTSA, a plaintiff must allege: "(1) the existence of a trade secret; (2) acquisition of a trade secret as a result of a confidential relationship or through improper means; and (3) an unauthorized use of the trade secret." *Novus Grp., LLC v. Prudential Fin., Inc.*, 74 F.4th 424, 427–28 (6th Cir. 2023) (citing *Tomaydo-Tomahhdo L.L.C. v. Vozary*, 82 N.E.3d 1180, 1184 (Ohio Ct. App. 2017)). Courts consider DTSA and OUTSA claims together because the definition and requirements are generally the same. *See James B. Oswald Co. v. Neate*, 98 F.4th 666, 675 (6th Cir. 2024) (considering DTSA and OUTSA claim

-6-

together); see also *Sunjoy Indus. Grp., Ltd. v. Permasteel, Inc.*, No. 22-cv-1896, 2023 WL 406211, 2023 U.S. Dist. LEXIS 13257 (S.D. Ohio Jan. 25, 2023) ("Courts consider these state and federal law claims together because the definition and requirements of the OUTSA and DTSA are essentially the same.").

A "trade secret" is information the owner "has taken reasonable measures to keep... secret" that " 'derives independent economic value... from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.' " *James B. Oswald Company v. Neate*, 98 F.4th 666, 675 (6th Cir. 2024)(quoting 18 U.S.C. § 1839(3)). A plaintiff must define the trade secrets with "reasonable particularity," meaning "particular enough as to separate the trade secret from matters of general knowledge in the trade or special knowledge of persons skilled in the trade." *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 381(6th Cir. 2022). "Whether a particular type of information constitutes a trade secret is a question of fact." *Id.* at 381 citing *Alph C. Kaufman*, 540 S.W.3d at 818 (quoting *Fastenal Co. v. Crawford*, 609 F. Supp. 2d 650, 672 (E.D. Ky. 2009)) see also *Best Process Sols., v. Blue Phoenix Inashco USA Inc.*, 569 F. Supp. 3d 702, 713 (N.D. Ohio 2021)(Determining whether information constitutes a trade secret is a "highly fact specific inquiry.") At this stage of the proceedings, on a motion to dismiss, courts generally find "so long as the plaintiff can put forth general categories of its trade secrets and provide the type of factual allegations...that allow for the reasonable inference that the defendants improperly disclosed some of those trade secrets...the plaintiff has done all that is required to survive a motion to dismiss." *C.R.H. Indus. Water, LLC v. Eiermann*, No. 1:23-CV-01805, 2024 WL 4856109, at *4 (N.D. Ohio Nov. 21, 2024) citing *Best Process Sol.,*

*Inc.,* 569 F.Supp.3d at 714.

Here, Plaintiffs contend that the Complaint satisfies the pleading requirements by identifying several trade secrets misappropriated by Defendants including confidential information related to STERIS's research and development of novel innovations in ligation techniques to treat GERD and obesity (ECF #1 ¶¶ 53-55, 72-74, 172, 200) and confidential US Endoscopy and STERIS technical documentation and manuals related to research and development of endoscopic products. (ECF #1 ¶¶ 154m 172, 189, 200). While Defendants contend that these allegations are insufficient to separate any alleged trade secrets from information in the public domain, plaintiffs are not required to disclose in detail their trade secrets at this early point in the proceedings because doing so would "expose the secrets and undermine their value." *Church Mut. Ins. Co. v. Smith*, No. 3:14-CV-749-JHM, 2015 WL 3480656, at *4 (W.D. Ky. June 2, 2015). Accordingly, the Court finds that Plaintiffs have sufficiently described their trade secrets to survive a motion for judgment of the pleadings. A full factual comparison of Plaintiffs' trade secrets to information in the public domain is more appropriate on a motion for summary judgment.

Defendants contend that Plaintiffs failed to assert factual allegations sufficient to show that they protected their alleged trade secrets given the publicly available patent applications and information on STERIS's website. The Complaint demonstrates that Plaintiffs took appropriate steps to safeguard their confidential information including preparing non-disclosure agreements with employees, contractors, suppliers, electronic and IT safeguards and restricting access to trade secrets on a need to know basis. (ECF #1 at ¶¶ 32-33, 50-51,157, 175) Indeed, a number of the non-disclosure agreements are at issue in this action. Further, while Plaintiffs' alleged trade

secrets may work in conjunction with products subject to patents, the allegations in the Complaint do not limit Plaintiffs' trade secrets to inventions set forth in patent applications or information available on STERIS's website. As noted above, a more factual intensive comparison of Plaintiffs' alleged trade secrets with publicly available information is more appropriate at the summary judgment stage.

Finally, Defendants assert that the Complaint fails to allege that Plaintiffs actually used Plaintiffs' trade secrets. Plaintiffs note that "actual use" is not required to state a claim for trade secret misappropriation under the DTSA or OUTSA because both require disclosure **or** use of a trade secret. See 18 U.S. C. § 1839(5)(B)(ii); Ohio Rev. Code § 1333.61(5). Here, Plaintiffs allege that Haller had access to Plaintiffs' confidential trade secret information and that he disclosed these trade secrets to Endolastic and that Endolastic used the information to develop products incorporating Plaintiffs' trade secrets. See ECF #1 ¶¶ 32-33, 50-51, 53-55, 72-74, 78-79, 154, 157, 172, 175, 189, 200). The allegations detailing Haller's work while at STERIS and his work assigned to Endoscopy and the descriptions of the Endolastic patent on products used to treat GERD and obesity–allegedly the same confidential research performed by Haller while at STERIS --are sufficient to make Plaintiffs' allegations of disclosure and use of Plaintiffs' trade secret information plausible. Plaintiffs have alleged plausible claims for trade secret misappropriation under the DTSA and OUTSA.

### B. Breach of Contract Claims

Defendants assert a number of reasons that Plaintiffs claims of breach of contract (Counts I-V) fail. First Defendants contend that all of the breach of contract claims are predicated on Haller's alleged misappropriation of trade secrets and as such fail. As the Court has denied

Defendants' motion for judgment on the pleadings as to the trade secret claims, this argument fails. The rest of Defendants arguments relating to the breach of contract claims all involve factual questions not appropriate on a motion to dismiss. These include questions of whether Haller signed the 2021 and 2022 LTI agreements, whether Endolastic actually competes with Plaintiffs, and whether the time periods in each contract have elapsed. Defendants' motion for judgment on the pleadings as to the breach of contract claims (Counts I-V) is denied.

### C. Preemption of Conversion and Tortious Interference Claims

Plaintiffs assert claims of conversion in Counts VI and VII alleging that Haller and Endolastic wrongfully converted US Endoscopy's intellectual property (Count VI) and STERIS's intellectual property (Count VII). In Count VIII Plaintiffs allege that Endolastic interfered with the APA and Confidentiality and Invention Assignment Agreement between Haller and Endolastic and with the Employment Agreement, 2021 LTI and the 2022 LTI between Haller and STERIS (Count IX) by relying on Haller's knowledge of US Endoscopy's and STERIS's intellectual property and confidential information to develop copycat products. Defendants argue that these claims are preempted by OUTSA.

OUTSA expressly "displace[s] conflicting tort, restitutionary, and other laws... providing civil remedies for misappropriation of a trade secret." R.C. § 1333.67(A). "[C]ourts analyzing whether OUTSA preempts a particular claim must look to whether that claim relies on the same operative facts that formed the basis for the party's trade secrets misappropriation claim." *Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 414 (6th Cir. 2024) (*citing Stolle Mach. Co. LLC v. RAM Precision Indus.*, 605 F. App'x 473, 484 (6th Cir. 2015)). "[W]here the state-law claim has a factual basis independent from the facts establishing the OUTSA claim, the portion of the claim

-10-

supported by an independent factual basis survives preemption." *Id.* (quotations omitted); see also *Stolle Mach. Co.*, 605 F. App'x at 484 ("The test to determine whether a state law claim is displaced by OUTSA is to determine whether the claims are no more than a restatement of the same operative facts that formed the basis of the plaintiff's statutory claim for trade secret misappropriation.") (quotation and citation omitted). The "key inquiry is whether the same factual allegations of misappropriation are being used to obtain relief outside the Uniform Trade Secrets Act." *Hanneman Fam. Funeral Home and Crematorium v. Orians*, 174 Ohio St.3d 130, 235 N.E.3d 361, 367 (Ohio 2023) (citation omitted).

In general, "granting a motion to dismiss on the ground that a claim is preempted by OUTSA is inappropriate where it is 'unclear whether discovery would enable plaintiff to base its additional state law claims on facts different from those alleged in its trade secret claim.' " *ADSC Holdings, Inc. v. Damman*, No. 20-cv-2554, 2021 WL 4189724 at *1, 2021 U.S. Dist. LEXIS 196552 at *3 (N.D. Ohio Feb. 10, 2021) (quoting *Thermodyn Corp. v. 3M Co.*, 593 F.Supp.2d 972, 990 (N.D. Ohio 2008)).

Plaintiffs contend that they allege bases for conversion independent of their trade secret claims. Specifically, Plaintiffs alleges that in Count VI, US Endoscopy alleged it acquired all rights and ownership to Intelligent Endoscopy's intellectual property, including confidential, non-trade secret information, as well as all inventions developed by Haller and assigned to Intelligent Endoscopy. In Count VII Plaintiffs allege that Defendants have used and refused to release STERIS's intellectual property, which includes STERIS's records, as well as public and confidential (but not trade secret) information that belongs to STERIS. The only difference between the conversion claims and the misappropriation of trade secret claims is that Plaintiffs

-11-

include intellectual property and confidential information that is not a trade secret but claim that Defendants are using this information in contravention of Plaintiffs' ownership rights. The fact that all confidential information converted may not be a trade secret does not prevent preemption. *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 722 (N.D. Ohio 2009); *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F.Supp.2d 943, 948–49 (W.D.Mich.2003) ("[A]llowing otherwise displaced tort claims to proceed on the basis that the information may not rise to the level of a trade secret would defeat the purpose of the UTSA."); *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F.Supp.2d 426, 433 (D.Del.2005) ("Because all claims stemming from the same acts as the alleged misappropriation are intended to be displaced, a claim can be displaced even if the information at issue is not a trade secret."). In this case, Plaintiffs' conversion claims (Counts VI and VII) are preempted by OUTSA.

The factual allegations made by US Endoscopy in support of its tortious interference with contract claim against Endolastic (Count VIII) are mainly a restatement of the same operative facts supporting its trade secret misappropriation claim: US Endoscopy and Haller had a contract for the sale of Intelligent Endoscopy's assets to US Endoscopy including all of Intelligent Endoscopy's intellectual property and all inventions developed by Haller and assigned to Intelligent Endoscopy; Intelligent Endoscopy and Haller had a contract obligating Haller to maintain confidentiality and assign all inventions to Intelligent Endoscopy; Endolastic was aware of these contracts; and by relying on Haller's knowledge of US Endoscopy's intellectual property and confidential information and inventions, it developed and advertised Endolastic's copycat products. See ECF #1 ¶¶ 135-138). As such, Count VIII is preempted by OUTSA.

Unlike Count VIII, Count IX includes some independent bases from Plaintiffs' OUTSA claims as follows: STERIS alleges that Haller executed an Employment Agreement with STERIS

which required him to return all records upon termination of employment, assign all ownership rights to any inventions or developments made by Haller in the course of his employment with STERIS, keep confidential all proprietary or sensitive business information and not compete directly with STERIS for one year following termination of his employment. Haller also executed the 2021 and 2022 LTI Agreements which contained additional non-disclosure and non-competition clauses. Endolastic was aware of these contracts and intentionally interfered with these contracts. Accordingly, Count IX is not preempted by OUTSA in so far as it alleges interference with the Employment Agreement and the 2021 and 2022 LTI Agreements.

Defendants' Motion for Judgment on the Pleadings is granted in part as to Counts VI, VII and VIII and denied as to Counts I-V and IX.

## II. Plaintiffs' Motion for Judgment on the Pleadings as to Defendants' Counterclaims

Defendants Haller and Endolastic assert two counterclaims against Plaintiffs. The first is for Declaratory Judgment on the restrictive covenants found in the Employment Agreement, the APA, the Confidentiality and Inventions Assignment Agreement, and the 2021 and 2022 LTI Agreements (collectively, the "Agreements"). (ECF # 8 ¶¶ 68-72)The second is for unfair competition asserting that Plaintiffs filed their Complaint to unfairly eliminate Haller and Endolastic as competitors for treating GERD and to interfere with Endolastic's business relationships, including its attempts to secure investors and to perform clinical trials. *Id.* at ¶¶ 74-80.

Plaintiffs have moved for judgment on the pleadings on the counterclaims asserting that Defendants have failed to state claims for declaratory judgment or unfair competition. (ECF #13) With respect to Defendants' counterclaim for declaratory judgment, Plaintiffs contend that the

-13-

counterclaim is redundant of Plaintiffs' affirmative claims– "no more than the inverse of Plaintiffs' breach of contract and tortious interference claims" and must be dismissed. *Id.* at 7.

Federal district courts have substantial discretion in deciding whether or not to exercise jurisdiction over a declaratory judgment action. *W. World Ins. Co. V. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014). Typically, courts evaluate jurisdiction over a declaratory judgment using the five factors found in *Grand Trunk W.R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The *Grand Trunk* factors examine whether the declaratory judgment (1) would settle the controversy; (2) would serve a useful purpose in clarifying the legal relations at issue; (3) is being used merely for "procedural fencing" or to "provide an arena for a race for res judicata"; (4) would increase friction between state and federal courts and improperly encroach on state jurisdiction; and (5) whether there is a more effective, alternative remedy. *Malibu Media, LLC v. Redacted*, 705 F. App'x 402, 405 (6th Cir. 2017) citing *Grand Trunk*, 746 F.2d at 326.

The district court in *Malibu Media* did not discuss the *Grand Trunk* factors when dismissing Redacted's counterclaim for declaratory judgment finding that it was redundant of Malibu Media's copyright infringement suit and thus failed to state a claim upon which relief could be granted under Fed. R. Civ. P. 12(b)(6). On appeal, the Sixth Circuit noted that district courts typically evaluate whether a declaratory judgment "will serve a useful purpose" by "looking specifically at the issue of redundancy and may do so without relying on the *Grand Trunk* factors." *Malibu Media*, 705 F. App'x at 405-406. See, e.g., *Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289 (6th Cir. May 27, 1987) (unpublished table decision) (finding that a magistrate judge appropriately denied a motion to add a counterclaim because "when a counterclaim merely restates the issue as a 'mirror image' to the complaint, the counterclaim serves no purpose"); *Orleans Int'l, Inc. v. Mistica Foods, L.L.C.*, No. 15-13525, 2016 WL

-14-

3878256, at *2-3 (E.D. Mich. Jul. 18, 2016) (dismissing declaratory judgment counterclaim under Rule 12(b)(6) because it was redundant to the plaintiff's claims and therefore did not serve a useful purpose); *Pettrey v. Enter. Title Agency, Inc.*, No. 1:05-cv-1504, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006) (determining that there was "no useful purpose" for retaining the defendants' declaratory judgment counterclaims when the factual and legal issues were identical and the counterclaims would be rendered moot by adjudication of the plaintiff's claims).

Review of Counterclaim 1, the Complaint, the Answer and the Affirmative Defenses asserted by Defendants reveals that the declaratory judgment counterclaim does not present any issues not already before the Court. In Counts I-V of the Complaint, Plaintiffs allege that Haller breached various restrictive covenants set forth in the APA, Assignment Agreement, Employment Agreement, and the two LTI Agreements. Further, Plaintiff alleges in Count XIII that Endolastic tortiously interfered by procuring those breaches. Defendants assert in their Answer and Affirmative Defenses that Haller did not breach those Agreements and that Endolastic did not procure those breaches. Defendants assert in Counterclaim 1 that Plaintiffs "lack a legitimate business interest reasonably to protect, in that they possess no trade secrets related to the SMARTBAND system." (Counterclaim, ECF #8, ¶ 70) However, in their Answer Defendants stated that Plaintiffs "have publicly disclosed numerous trade secrets about" the SMARTBAND system, and further asserted as an Affirmative Defense that "Plaintiffs do not have a legitimate business interest that justifies enforcing the restrictive covenants in the contracts attached to the Complaint." (Answer ¶¶155, 157, 173, 175, 187, 198; Affirmative Defenses ¶4) Finally, Defendants' allegation in their Counterclaim that "the temporal and geographic restrictions in the Agreements are unreasonable and unenforceable; the scope of prohibited activities in the Agreements are unreasonable and unenforceable" (Counterclaims, ¶ 70) is virtually identical to

-15-

Defendants tenth Affirmative Defense, "[t]he restrictions in the restrictive covenants in the contracts attached to the Complaint are unreasonable and overbroad as to duration, geographic scope and scope of activity." (Affirmative Defense, ¶ 10)

Defendants' contend that the declaratory judgment counterclaim is not a mirror image of Plaintiffs' breach of contract and tortious interference claims because the counterclaim adds new facts and seeks to declare the restrictive covenants unenforceable rather than merely finding that Defendants did not breach them in this instance. However, it is clear to the Court that Defendants will have a full opportunity to litigate their defenses that the contracts' restrictive covenants are invalid, unreasonable and unenforceable while litigating Plaintiffs' affirmative claims. As such, Counterclaim 1 seeking declaratory judgment is redundant to Plaintiffs' affirmative claims and Defendants' Answer and Affirmative Defenses and is dismissed.

In their counterclaim for unfair competition, Defendants allege that Plaintiffs view Defendants as competitors of the endoscopic method for treating GERD and filed their Complaint to unfairly eliminate Defendants as competitors for treating GERD and to interfere with Endolastic's business relationships, including its attempts to secure investors and perform clinical trials. (ECF #8 ¶¶ 74-76) Further, Defendants assert that based on the assurances Defendants provided, as well as Plaintiffs actions and representations to the EEOC, Plaintiffs lacked an objective and reasonable basis to expect success on the merits of the litigation. Finally, Defendants allege that Plaintiffs' filed their Complaint with the subjective intent to injure Defendants' ability to be competitive. (*Id* at ¶¶ 77-78) In their motion for judgment on the pleadings Plaintiffs contend that Defendants have failed to plausibly plead that Plaintiffs' lawsuit is objectively baseless requiring dismissal of the unfair competition counterclaim.

-16-

"Ohio common law recognizes a claim for unfair competition based on malicious litigation." *Restoration Hardware, Inc. v. Bungalow Home, LLC*., No. 2:19-CV-4978, 2020 WL 4436357, at *3 (S.D. Ohio Aug. 3, 2020) quoting *Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*, No. 2:11-CV-427, 2015 WL 12999664, at *3 (S.D. Ohio Mar. 12, 2015) (quoting *All Metal Sales, Inc. v. All Metal Source, LLC*, No. 1:10-cv-2343, 2011 WL 867020, at *2 (N.D. Ohio Mar. 11, 2011)). "To successfully establish an unfair competition claim based upon legal action, a party must show that the legal action is objectively baseless and that the opposing party had the subjective intent to injure the party's ability to be competitive." *Id.* (quoting *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St. 3d 366, 367 (Ohio Sup. Ct. 2012)).

The Sixth Circuit has extended the Noerr-Pennington doctrine, which provides private parties with immunity from anti-trust liability when they are petitioning for government action, by analogy to claims brought under both state and federal laws, including common law claims of tortious interference such that trademark owners (or trade secret owners) are protected against anti-competition claims that arise from their use of legal proceedings to enforce their rights. The Noerr-Pennington doctrine contains a narrow exception in which immunity does not apply to sham lawsuits filed for the purpose of interfering with competition. To constitute sham litigation, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Restoration Hardware, Inc.*, 2020 WL 4436357, at *3 citing *Prof'. Real Estate Investors, Inc. v Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-62 (1993) (quoting *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961) *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991).

-17-

The issue of whether a lawsuit is objectively baseless is a question of law for the Court and may be decided on a motion to dismiss. *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 309 (N.D. Ohio 2021) citing *Ashley Furniture Indus.*, 2015 WL 12999664, at *4 (citations omitted); see also *Prof'l Real Estate Inv'rs*, 508 U.S. at 67, 113 S.Ct. 1920 (the question whether a suit is objectively baseless is purely one of law).

The Court has carefully reviewed the Complaint, as well as Defendants' filings and has determined that Plaintiffs have plausibly pled claims of trade secret misappropriation, breach of contract and tortious interference such that Defendants' factual assertions to the contrary do not demonstrate that this lawsuit is objectively baseless. As such, Defendants' counterclaim for unfair competition is dismissed.

## Conclusion

For the reasons stated above, the Defendants' Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) (ECF #9) is granted in part as to Counts VI, VII and VIII and denied as to the remainder of the Complaint. Plaintiffs' Motion for Judgment on the Pleadings as to Defendants Counterclaims (ECF #13) is granted and the Counterclaims are dismissed.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: June 26, 2026

-18-